# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

| | |
|---|---|
| TERRANCE MIGUEL PETERSON,<br>Appellant,<br><br>v.<br><br>DEPARTMENT OF VETERANS<br>AFFAIRS,<br>Agency. | DOCKET NUMBERS<br>PH-0752-14-0706-I-1<br>PH-1221-14-0618-W-1<br><br><br>DATE: July 31, 2015 |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Terrance Miguel Peterson, Newark, Delaware, pro se.

Marcus S. Graham, Esquire, Pittsburgh, Pennsylvania, for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which: (1) sustained both charges, found that he did not prove any of his affirmative defenses, and affirmed the removal action; and (2) denied his request for corrective action in the individual right of action (IRA) appeal concerning his

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

10-day suspension. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. We MODIFY the initial decision to: (1) address the appellant's argument regarding the administrative judge's allegedly improper consideration of hearsay evidence from Patient A; (2) discuss the appellant's potential claims pursuant to the Veterans Employment Opportunities Act of 1998 (VEOA) and/or the Uniformed Services Employment and Reemployment Rights Act of 1994 (codified at 38 U.S.C. §§ 4301-4333) (USERRA); and (3) supplement the administrative judge's analysis of the appellant's claims of whistleblower reprisal and harmful procedural error. We find that the appellant's arguments on review do not warrant a different outcome. Except as expressly modified by this Final Order, we AFFIRM the initial decision.

## BACKGROUND

¶2       The appellant, a Health Technician, filed an appeal challenging the agency's decision to remove him based on a charges of performing work outside the scope of his position (three specifications) and conduct unbecoming a Federal employee (three specifications). *Peterson v. Department of Veterans Affairs*,

MSPB Docket No. PH-0752-14-0706-I-1, Initial Appeal File (0706 IAF), Tab 1, Tab 6 at 22, 46-48.  The appellant also filed an IRA appeal, alleging that his earlier 10-day suspension was in reprisal for protected whistleblowing activity.  *Peterson v. Department of Veterans Affairs*, MSPB Docket No. PH-1221-14-0618-I-1, Initial Appeal File (0618 IAF), Tab 1.  The administrative judge joined these appeals.  0706 IAF, Tab 3.

¶3      The appellant filed various motions, including to compel discovery, for certification of an interlocutory appeal, for sanctions, and for the administrative judge to recuse himself, and he also filed a request to stay the proposed removal.  *See, e.g.*, 0706 IAF, Tabs 11, 17, 23, 27, 32, 40; 0618 IAF, Tab 9; *see also Peterson v. Department of Veterans Affairs*, PH-1221-14-0618-S-1, Stay Request File (0618 SRF), Tab 1.  The administrative judge denied these motions.  *See* 0706 IAF, Tab 51; *see also* 0618 SRF, Tab 4.  The appellant waived his right to a hearing in the chapter 75 appeal and the IRA appeal.  *See* 0706 IAF, Tab 33.

¶4      The administrative judge issued a lengthy initial decision.  0706 IAF, Tab 60, Initial Decision (ID).  Regarding the IRA appeal, the administrative judge determined that the appellant proved that his disclosures were protected but that he failed to establish that his disclosures were a contributing factor in the agency's decision to suspend him for 10 days.  ID at 11-14.  The administrative judge also determined that, even if the appellant had established that the disclosures were a contributing factor in his suspension, the agency proved by clear and convincing evidence that it would have suspended him absent the protected activity.  ID at 14-16.  In the chapter 75 appeal, the administrative judge sustained both charges and all of the specifications alleged therein.  *See* ID at 17-22.  The administrative judge further found that the appellant did not prove his affirmative defenses of reprisal for whistleblowing activity, reprisal for protected equal employment opportunity (EEO) activity, race and disability discrimination, a hostile working environment, and harmful procedural error.  ID

at 22-35.  He also found that the removal penalty was reasonable and promoted the efficiency of the service.  ID at 36-37.

¶5		The appellant has filed a petition for review and five supplemental submissions.  Petition for Review (PFR) File, Tabs 1-6.  The agency has filed a response to the petition for review, and the appellant has filed a reply and a supplemental reply.  PFR File, Tabs 8-10.  The appellant also has filed a request to file an additional pleading.[2]  *See* PFR File, Tab 14.

¶6		After the parties filed their submissions on review, the Office of the Clerk of the Board issued an order that:  (1) acknowledged the appellant's assertion below that he was entitled to veterans' preference and that the agency discriminated against him based on his veteran status; (2) noted that the administrative judge did not give the appellant notice of his burdens pursuant to VEOA or USERRA; (3) provided such notice to the appellant; and (4) ordered the appellant to clarify the nature of his claims and to submit evidence in support of those claims.  PFR File, Tab 16.  Subsequently, the appellant filed three submissions, and the agency filed a response.  *See* PFR File, Tabs 17-20.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶7		On review, the appellant asserts that the administrative judge failed to properly weigh Patient A's hearsay evidence, improperly analyzed his whistleblowing, disability discrimination, and harmful procedural error claims, and failed to adjudicate his claims regarding veterans' preference.  He also appears to be alleging certain procedural errors, including the denial of his stay request, discovery rulings, and the denial of his requests for interlocutory appeal certification.  He appears, moreover, to assert administrative judge bias.

---

[2] We DENY this request because the appellant does not identify or describe any new evidence nor does he explain how this new evidence warrants a different outcome.

<u>We modify the initial decision to supplement the administrative judge's analysis of the existence and strength of the motive to retaliate on the part of any officials who were involved in the decision to suspend the appellant, but we conclude that the administrative judge properly denied the appellant's request for corrective action in the IRA appeal.</u>[3]

¶8        In an IRA appeal, after establishing the Board's jurisdiction, the appellant then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that:  (1) he made a disclosure described under 5 U.S.C. § 2302(b)(8) or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take or fail to take a personnel action as defined by 5 U.S.C. § 2302(a).   5 U.S.C. § 1221(e)(1); *Webb v. Department of the Interior*, 122 M.S.P.R. 248, ¶ 6 (2015).   If the appellant meets that burden, the Board shall order such corrective action as it considers appropriate unless the agency shows by clear and convincing evidence that it would have taken the same personnel action in the absence of the protected disclosure.   5 U.S.C. § 1221(e)(1)-(2); *Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 12 (2011).

¶9        Here, the appellant does not appear to challenge the administrative judge's finding that he failed to establish a prima facie case of whistleblower retaliation. Rather, he argues that the administrative judge incorrectly analyzed the connection between the Administrative Investigation Board (AIB) and the agency's action.  In this regard, he appears to allege that the director that ordered the AIB was "directly aware of the [d]isclosures," and "the charged conduct [would] not have occurred" without the AIB's decision to order anger management.  PFR File, Tab 3 at 3.  We interpret these arguments as relating to the existence and strength of any motive to retaliate on the part of agency

---

[3] The agency did not file a petition for review challenging the administrative judge's conclusion that the appellant made protected disclosures regarding improper handling of medical instruments, a delay in the arrival of hearing aids, safety concerns in the dialysis unit, and dirty medical instruments, ID at 12, and we affirm these findings.

officials who were involved in the decision. *See Carr v. Social Security Administration*, [185 F.3d 1318](), 1323 (Fed. Cir. 1999).[4] Because the appellant raised these arguments below in the context of the suspension, *see* 0706 IAF, Tab 49 at 3, the administrative judge did not address them in the initial decision, and the appellant withdrew his request for a hearing, *see* 0706 IAF, Tab 33, we may resolve these issues on the current record. *See Whitmore v. Department of Labor*, [680 F.3d 1353](), 1368 (Fed. Cir. 2012) ("It is error for the MSPB to not evaluate all the pertinent evidence in determining whether an element of a claim or defense has been proven adequately.").

¶10    The record reflects that D.H., the then-Director, initiated the AIB in April 2013 to investigate allegations of safety concerns and concerns about procedures being followed in the Ear, Nose and Throat Specialty Clinic where the appellant worked. *See* 0618 IAF, Tab 18 at 16; *see also* 0706 IAF, Tab 30 at 21-26. The record also reflects that D.H. was aware of some of the appellant's disclosures. *See, e.g.*, 0706 IAF, Tab 12 at 21. Even if we were to conclude, solely for the purposes of our analysis, that D.H.'s decision to initiate the AIB was in retaliation for the appellant's disclosures, there is no evidence whatsoever that D.H. unduly influenced any of the members of the AIB, A.M.,[5] or the proposing or deciding officials in the suspension. *See Aquino v. Department of Homeland Security*, [121 M.S.P.R. 35](), ¶ 23 (2014) (an appellant can demonstrate that a prohibited animus toward a whistleblower was a contributing factor in a

---

[4] Regarding the other *Carr* factors, the appellant does not appear to challenge the administrative judge's assessment of the strength of the agency's evidence regarding the conduct unbecoming charge or its two specifications, ID at 15-16, and we affirm this portion of the initial decision. Although the administrative judge did not discuss the third element, evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated, the appellant does not raise any error in this regard on review.

[5] A.M. was the Program Director of the anger management facility to which the appellant was referred as a result of the AIB, and whose contact with the appellant led to specification 2 in the conduct unbecoming charge. *See, e.g.*, 0706 IAF, Tab 43 at 32-33; 0618 IAF, Tab 1 at 2.

personnel action by showing by preponderant evidence that an individual with knowledge of the appellant's protected disclosure influenced the deciding official accused of taking the personnel action). Nor is there any evidence that any members of the AIB or A.M. acted in retaliation for the appellant's whistleblowing activity. *See, e.g.*, 0706 IAF Tab 30 at 21-26, Tab 43 at 25-26, 32-33. It appears true that the appellant would not have been ordered to attend anger management absent the results of the AIB, which found, among other things, that he "has demonstrated disruptive and inappropriate behavior" and his actions "are perceived as threats of physical violence, harassment, intimidation, and other threatening behaviors." 0706 IAF, Tab 30 at 18, 21-26. However, this chronology does not create a causal connection between the appellant's disclosures and the charged misconduct described in specification 2 of the conduct unbecoming charge. *See, e.g.*, *Carr*, 185 F.3d at 1326 (the whistleblower protection rules are not meant to protect employees from their own misconduct). We are therefore not persuaded by these arguments.

¶11 We further modify the initial decision to supplement the administrative judge's conclusion that none of the appellant's disclosures were directed against the proposing and deciding officials and neither official had actual or constructive knowledge of the disclosures. *See* ID at 16. It appears that the proposing official, Associate Chief Nurse for Ambulatory Care R.W., and the deciding official, Associate Director M.A.J., had some knowledge of the appellant's various complaints to the Office of the Inspector General (OIG) and his EEO complaints. *See, e.g.*, 0706 IAF, Tab 43 at 34-35, 38. The appellant's disclosures, even if not directed at R.W. or M.A.J., could reflect poorly on them in their respective supervisory positions and, thus, could be evidence of a retaliatory motive. *See, e.g.*, *Whitmore*, 680 F.3d at 1370 ("Those responsible for the agency's performance overall may well be motivated to retaliate even if they are not directly implicated by the disclosures, and even if they do not know the whistleblower personally, as the criticism reflects on them in their capacities as

managers and employees."). We note, however, that both R.W. and M.A.J. declared that the appellant's protected activity and/or his disclosures did not play any part in their respective decisions to propose or effect the suspension. *See* 0706 IAF, Tab 43 at 35, 37.

¶12 Based on our supplemental analysis of the agency's motive to retaliate and the appellant's evidence and argument in this regard, we conclude that the agency demonstrated by clear and convincing evidence that it would have suspended the appellant even absent his whistleblowing activity. We therefore agree with the administrative judge's decision to deny corrective action in the IRA appeal.

We modify the initial decision to address the appellant's arguments regarding the probative value of Patient A's hearsay evidence and his claims regarding his affirmative defenses of reprisal for whistleblowing activity and harmful procedural error, but these arguments do not warrant a different outcome in the removal appeal.

¶13 We have considered the appellant's assertion that the administrative judge improperly evaluated Patient A's hearsay evidence. *See* PFR File, Tab 1 at 5. We understand this argument to relate only to specifications 1 and 3 of charge 1, performing work outside the scope of his position.[6] It is well settled that relevant hearsay is admissible in administrative proceedings. *See, e.g.*, *Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 15 (2014); *Borninkhof v. Department of Justice*, 5 M.S.P.R. 77, 83 (1981). An assessment of the probative value of hearsay evidence necessarily depends on the circumstances of each case.

---

[6] In specification 2, the agency charged the appellant with documenting in Patient A's Progress Note that there were "alternative methods [for managing the buildup of wax in Patient A's ears] by consulting the local pharmacy for over-the-counter methods." 0706 IAF, Tab 6 at 46. The appellant's argument regarding the administrative judge's consideration of Patient A's hearsay evidence does not appear to implicate specification 2. Moreover, the appellant does not dispute that he made this entry in Patient A's electronic record, and it does not appear that this work was within the scope of the appellant's assigned duties. *See* 0706 IAF, Tab 6 at 64; *see also* 0706 IAF, Tab 30 at 35-42, 44-94. In the absence of any challenge to the administrative judge's decision to sustain specification 2, we affirm the administrative judge's decision to sustain this specification.

*Borninkhof*, 5 M.S.P.R. at 83-87. The Board evaluates the probative value of hearsay under the following factors, among others: the availability of persons with firsthand knowledge to testify at the hearing; whether the out-of-court statements were sworn; the consistency of the out-of-court statements with other statements and evidence; the consistency of declarants' accounts with other information in the case, internal consistency, and their consistency with each other; and whether corroboration for the statements can otherwise be found in the agency record. *Id*. at 87.

¶14  Specification 1 charged the appellant with removing wax from Patient A's ears on October 25, 2013. 0706 IAF, Tab 6 at 46. Specification 3 charged the appellant with cleaning Patient A's ears "[o]n more than one occasion." *Id*. To support these specifications, the agency relied on declarations, made under penalty of perjury, from Medical Support Assistant B.R. and R.W. who observed and/or talked to Patient A regarding these allegations. B.R. stated in her declaration that Patient A came to the medical center on October 25, 2013, he complained to her about wax build up in his ears, he specifically asked for the appellant by name, and he told her that the appellant had removed wax from his ears previously and that he would like to see him again. 0706 IAF, Tab 43 at 39. B.R. further stated in her declaration that she filled out a walk-in sheet for Patient A, the appellant retrieved the sheet, and he called Patient A into an examination room, where they stayed for 15 minutes. *Id.* B.R. stated that she did not observe any other individuals enter the room. *Id.* Upon exiting the examination room, Patient A told B.R. that his ears felt much better. *Id.* In her declaration, R.W. stated that she spoke with Patient A on the telephone on March 10, 2014, and he stated, among other things, that the appellant did an "excellent job" cleaning his ears and that the appellant cleans his ears "all the time," including in the last few months. 0706 IAF, Tab 43 at 34-35; *see* 0706 IAF, Tab 6 at 60-61. The appellant denied cleaning Patient A's ears on October 25, 2013. *See, e.g.*, 0706 IAF, Tab 6 at 27.

¶15        Although the administrative judge did not analyze the *Borninkhof* factors in his assessment of the hearsay evidence related to charge 1, we do so now because the record is fully developed below.  It is immaterial whether Patient A was available to testify because the appellant withdrew his request for a hearing.  Weighing against the probative value of Patient A's hearsay evidence is the fact that the agency did not provide a sworn statement from Patient A, and it offered no explanation for why it was unable to do so.  *See Wallace v. Department of Health & Human Services*, 89 M.S.P.R. 178, ¶ 7 (2001).  We find, however, that an assessment of the remaining relevant *Borninkhof* factors weighs in favor of the probative value of Patient A's hearsay evidence.  Significantly, B.R.'s conversation with Patient A on October 25, 2013, and her observations of Patient A and the appellant on this date, are corroborated by the appellant's entry in Patient A's electronic medical record that Patient A complained about "wax in his ears" and R.W.'s later conversation with Patient A.  *See* 0706 IAF, Tab 6 at 64, Tab 43 at 34-35.  Moreover, there was no evidence that any doctor or other authorized professional saw Patient A on October 25, 2013.  We conclude that Patient A's hearsay evidence has probative value, and it is more likely than not that the appellant cleaned Patient A's ears on this date.  The appellant does not appear to challenge that such work only may be performed under the supervision of an audiologist or physician, *see* 0706 IAF, Tab 30, and we find that the agency proved specification 1 by preponderant evidence.

¶16        Because our decision to sustain specifications 1 and 2 is sufficient to support a finding that the agency proved charge 1, we need not resolve whether the probative value of Patient A's hearsay evidence supports a finding that the agency proved specification 3.  *See, e.g.*, *Burroughs v. Department of the Army*, 918 F.2d 170, 172 (Fed. Cir. 1990) (where more than one event or factual specification supports a single charge, proof of one or more, but not all, of the supporting specifications is sufficient to sustain the charge).

¶17    The appellant does not appear to challenge on review the administrative judge's decision to sustain any of the three specifications of the conduct unbecoming a Federal employee charge, which included allegations that the appellant:  (1) "threatened to cut [a doctor] up like a [t]urkey"; (2) stated to another agency employee that he was "going to hurt someone"; and (3) while on duty time, contacted A.M. and threatened to sue him based on what he said in an email to the appellant's supervisor.  0706 IAF, Tab 6 at 46-47.  In the absence of any challenge to the administrative judge's decision to sustain the charge and corresponding specifications, we affirm the initial decision in this regard.  *See, e.g.*, 0706 IAF, Tab 43 at 32-33, 42-45.

¶18    Regarding the appellant's defense of reprisal for whistleblowing activity, he does not challenge the administrative judge's decision to assume that he made protected disclosures based on his EEO complaints and his complaints to OIG, Congress, the Office of Special Counsel (OSC), the Department of Health and Human Services, and the Delaware Board of Professional Regulations.  *See* ID at 22-23, 25.  Rather, the appellant appears to challenge the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would have removed the appellant absent his whistleblowing activity.  *See* PFR File, Tab 3 at 3 (arguing that the agency retaliated against him by initiating an investigation into the allegations involving Patient A nearly 5 months after the alleged events).  We understand the appellant's argument to relate to the motive to retaliate element discussed in *Carr*.[7]

_____

[7] Regarding the strength of the agency's evidence, the administrative judge did not specifically discuss the appellant's response to the notice of proposed removal.  *See* 0706 IAF, Tab 6 at 26-29.  We modify the initial decision to consider the appellant's response per *Whitmore*, but we agree with the administrative judge that the agency's evidence is strong.  *See, e.g.*, 0706 IAF, Tab 43 at 32-35, 39, 42-45; *see also* 0706 IAF, Tab 6 at 64.  The appellant also does not appear to challenge the administrative judge's conclusion that there was "no evidence that any employee who was not a whistleblower was allowed to stay on the agency's rolls after committing misconduct of the magnitude" that he sustained in this matter.  ID at 25.

¶19     An investigation is not generally a personnel action under 5 U.S.C. § 2302(a)(2)(A); however, it is appropriate to consider evidence regarding an investigation if it is so closely related to a personnel action that it could have been a pretext for gathering information to retaliate for whistleblowing. *Shibuya v. Department of Agriculture*, 119 M.S.P.R. 537, ¶ 22 n.12 (2013). Here, the results of the investigation into the appellant's interactions with Patient A resulted in one of the charges (performing work outside the scope of his position) that ultimately led to his removal, which is a personnel action under 5 U.S.C. § 2302(a)(2)(A)(iii). *See Shibuya*, 119 M.S.P.R. 537, ¶ 22 n.12. The record reflects that R.W. contacted Patient A in March 2014. *See* 0706 IAF, Tab 6 at 59-60, Tab 43 at 35. The record also reflects that R.W. and proposing official M.A.J. had some knowledge of some of the appellant's disclosures but that deciding official Director R.A-W. did not. *See* 0706 IAF, Tab 43 at 34-38, 46-47. Even if we conclude, solely for the purposes of our analysis, that the appellant's disclosures were a contributing factor in R.W.'s decision to initiate an investigation into the appellant's contacts with Patient A, the appellant has identified no persuasive evidence upon which we could conclude that deciding official R.A-W. had constructive knowledge of the disclosures based on R.W.'s influence over the personnel action. *See Aquino*, 121 M.S.P.R. 35, ¶¶ 18-24.

¶20     We further modify the initial decision to supplement the administrative judge's analysis of the motive to retaliate element in his *Carr* analysis. In the initial decision, the administrative judge concluded that neither M.A.J. nor R.A-W. had a motive to retaliate against the appellant because M.A.J. did not consider his complaints and R.A-W. had no knowledge of any of his complaints. *See* ID at 24-25. The administrative judge failed to acknowledge that the appellant's disclosures, even if not directly made against proposing official M.A.J., could reflect negatively on her and could be indicative of a motive to retaliate. *See Whitmore*, 680 F.3d at 1370.

¶21    Notwithstanding our supplemental analysis, we conclude that the agency demonstrated by clear and convincing evidence that it would have removed the appellant absent his whistleblowing activity. *See, e.g.*, *Carr*, 185 F.3d at 1326 (the whistleblower protection rules are not meant to protect employees from their own misconduct).

¶22    The appellant asserts that the agency failed to follow its own procedures in the manner that it obtained evidence from Patient A. PFR File, Tab 1 at 5. The appellant raised this argument below, *see* 0706 IAF, Tab 36 at 5, but the administrative judge did not discuss it in his harmful procedural error analysis, *see* ID at 33-35. We therefore modify the initial decision to supplement the administrative judge's analysis of this issue. Even if we assume that the agency violated its procedures in the manner in which it obtained evidence from Patient A, the appellant has not persuaded us that any such error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *See Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991).

¶23    Regarding the appellant's failure to accommodate claim, the administrative judge found, among other things, that the appellant presented "scant evidence" of the nature of his disability other than to claim that he suffered from depression, and there was no evidence that he specifically asked his supervisors for an accommodation. *See* ID at 31-33.[8] The appellant states briefly that the agency denied his request for an accommodation, and he asserts that the "proposing official of the suspension and the deciding official were aware of the Appellant's history of depression." PFR File, Tab 1 at 5. Even if these arguments were true, the appellant does not explain how the administrative judge erred in his analysis of this claim.

---

[8] In his reasonable accommodation request, the appellant asked "to be supervised by another supervisor" because of a "hostile work environment." 0706 IAF, Tab 30 at 43. We cannot discern to whom this request was given.

¶24    The appellant does not appear to challenge the administrative judge's assessment of his affirmative defenses of reprisal for protected EEO activity, race discrimination, and/or a hostile working environment. We therefore affirm the administrative judge's conclusions in this regard.

¶25    The Board will review an agency-imposed penalty only to determine if the agency considered all the relevant factors and exercised management discretion within tolerable limits of reasonableness. *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 306 (1981). We conclude that the removal penalty is reasonable for the sustained misconduct, and we affirm the removal.[9]

¶26    To the extent that the appellant makes any additional arguments on review that relate to the IRA appeal or the chapter 75 appeal, we find that these arguments are without merit.

We modify the initial decision to discuss the appellant's assertions involving VEOA and USERRA, but we conclude that he has not proven either of these affirmative defenses.

¶27    In response to the order from the Office of the Clerk of the Board, the appellant states, in relevant part,[10] that the agency "treated [him] differently as a preference eligible veteran" and discriminated against him based on his status as a veteran. PFR File, Tab 17 at 4. He appears to allege that this discrimination is

---

[9] Even if we did not sustain specification 3 of charge 1, *see supra* ¶ 15, we still conclude that the removal penalty is reasonable. *See Payne v. U.S. Postal Service*, 72 M.S.P.R. 646, 650 (1996) (when all of the agency's charges are sustained, but some of the underlying specifications are not sustained, the agency's penalty determination is entitled to deference and should be reviewed only to determine whether it is within the parameters of reasonableness).

[10] In his three responsive submissions, the appellant includes many allegations that do not appear related to any claims involving his veterans' preference and/or his status as a veteran. *See, e.g.*, PFR File, Tab 17 (discussing allegations of a due process violation, Privacy Act violations, failure to train, administrative judge bias, and other legal issues related to his claim of reprisal for whistleblowing activity). Because the record on review was only open for clarification regarding his claims involving veterans' preference and/or discrimination based on his status as a veteran, we do not consider the other allegations in these submissions.

evidenced by the agency's April 2013 investigation of him and its decision to put a flag on his patient file in June 2014. *Id.* He also includes a list of "comparator employees," both veteran and nonveteran, whom he claims "were either treated similarly" or "more favorabl[y]" than him. *Id.* at 9-10. In response to the request for information regarding whether he received a closing letter from the Department of Labor, the appellant includes correspondence from the Department of Labor acknowledging that he had filed a USERRA complaint. PFR File, Tab 18 at 4-5. The appellant further states that his USERRA complaint was forwarded to OSC's USERRA unit, and he includes a close-out letter from OSC. PFR File, Tab 17 at 10, Tab 18 at 6. The OSC close-out letter reveals that the appellant alleged that the agency discriminated against him based on his status as a veteran when it "improperly placed a 'behavioral flag' on [his] patient medical record while [he was] employed there as a Health Technician" and that this flag made it difficult for him to obtain subsequent Federal employment. PFR File, Tab 18 at 6. The record reflects that the agency placed a behavioral restriction flag on the appellant's patient file in June 2014, nearly 2 months after his removal was effected. *See* 0706 IAF, Tab 10 at 168.

¶28    Based on these assertions, we conclude that the appellant has not proven by preponderant evidence that his military status was a motivating or substantial factor in the removal action. *See, e.g.*, *Sheehan v. Department of the Navy*, 240 F.3d 1009, 1013-15 (Fed. Cir. 2001). To the extent that the appellant is alleging that the agency's decision to initiate the AIB and/or to place a behavioral restriction flag on his patient file led to or is otherwise connected to the removal action, we find that he has not demonstrated that his military status was a motivating or substantial factor in either of these actions. Even if we were to conclude that the appellant met his burden in this regard, the agency has proven by preponderant evidence that its actions would have been taken for a valid reason despite the protected status. *See id.*; *see also* 0706 IAF, Tab 6 at 46-47 (describing the allegations of misconduct in the removal appeal), Tab 10

at 168 (explaining that the flag was placed on the appellant's patient file because of his history of personal attacks towards staff, violent and threatening behavior, and documentation of unpredictable and violent behavior at the facility), Tab 30 at 21-26 (AIB report of investigation). We also conclude that the appellant has not alleged any facts to show that he went to the Department of Labor for a VEOA issue or that he was even raising a VEOA issue in connection with his removal. *See Loggins v. U.S. Postal Service*, 112 M.S.P.R. 471, ¶ 15 (2009) (stating that veterans' preference rules appear only to apply to hiring and retention during a reduction in force). Thus, we find that the appellant has not proven either of these affirmative defenses in the removal action.[11]

¶29    To the extent that the appellant may be alleging that the agency violated USERRA and/or VEOA concerning the 10-day suspension in the IRA appeal, Congress did not give the Board general jurisdiction to decide the merits of the underlying personnel action except where they are relevant to the allegations of reprisal for whistleblowing activity. *See Marren v. Department of Justice*, 51 M.S.P.R. 632, 638 (1991), *aff'd*, 980 F.2d 745 (Fed. Cir. 1992) (Table), *and modified on other grounds by Robinson v. U.S. Postal Service*, 63 M.S.P.R. 307, 323 n.13 (1994). We have considered the appellant's allegations, but they do not change our analysis of the IRA appeal.

We discern no error with the administrative judge's rulings on the appellant's motions.

¶30    On review, the appellant asserts that he "was not afforded due process of the results of the AIB" and that the administrative judge erred when he denied the appellant's discovery requests regarding the AIB. PFR File, Tab 3 at 3. We note that the agency included a copy of the AIB results and recommendation in its

---

[11] To the extent that the appellant alleged below that any prior nonselections violated his veterans' preference rights, *see* 0706 IAF, Tab 30 at 32, he may file a separate VEOA appeal. The Board takes no position on whether it would have jurisdiction over such an appeal.

submissions, and it appears that the appellant obtained portions of the witness testimony during the AIB pursuant to a Freedom of Information Act request. *See* 0706 IAF, Tab 28 at 14-109, Tab 30 at 21-26. The AIB was not charged with investigating any of the allegations of misconduct for which the appellant was charged in either appeal, and we are not persuaded that any requested information regarding the AIB was reasonably calculated to lead to the discovery of admissible evidence in either the IRA appeal or the removal appeal. *See* 5 C.F.R. § 1201.72(a). We therefore discern no error with the administrative judge's decision to deny the appellant's motions to compel for this reason. *See* 0706 IAF, Tab 51.

¶31    Regarding the appellant's assertion that his due process rights were violated, the Board lacks jurisdiction to adjudicate the merits of such a claim in the context of an IRA appeal, and his assertion in this regard, even accepted as true, is not of sufficient weight to change our analysis of the IRA appeal concerning the 10-day suspension. *See Parikh v. Department of Veterans Affairs*, 116 M.S.P.R. 197, ¶ 34 (2011); *Marren*, 51 M.S.P.R. at 638. We also conclude that the appellant received all the due process to which he was entitled in the removal action. *See, e.g.*, *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 546 (1985) ("The essential requirements of due process … are notice and an opportunity to respond."); 5 C.F.R. § 752.404(b).

¶32    To the extent that the appellant challenges the administrative judge's decision to deny his multiple requests to certify an interlocutory appeal, we agree with the administrative judge's conclusion that the appellant did not prove that an immediate Board ruling is necessary or that the issues presented involved an important question of law about which there is substantial ground for disagreement. 0706 IAF, Tab 51; *see* 0618 IAF, Tab 19; 0706 IAF, Tabs 17, 27; *see also* 5 C.F.R. § 1201.92.

¶33    Below, the appellant requested a sanction of "summary judgment based on harmful procedural error," and he appeared to allege that the agency

representative had "prejudicial communications" with a "prospective witness" and that his due process rights were violated. 0706 IAF, Tab 32 at 3. The administrative judge denied this request because the Board lacks authority to grant summary judgment under normal circumstances, and he stated that he did not see a reason to do so as a sanction. 0706 IAF, Tab 51 at 3. The appellant's bare assertions on review, that the agency's communications with the prospective witness were "ex[] parte communications to potential witnesses" and he was unable to respond to the "later characterizations" of him by the agency representatives, PFR File, Tab 2 at 3, do not persuade us that the administrative judge abused his discretion. *See Leseman v. Department of the Army*, 122 M.S.P.R. 139, ¶ 6 (2015); *see also* 5 C.F.R. § 1201.43 (an administrative judge may impose sanctions as necessary to serve the ends of justice).

¶34    We have considered the appellant's assertion that the administrative judge improperly denied his stay request because he did not consider the "4/30/2014" OSC close-out letter. PFR File, Tab 1 at 3; *see* 0618 IAF, Tab 14 at 5-7; *see also* 0618 SRF, Tab 4. We note, however, that OSC's close-out letter post-dates the administrative judge's order denying the stay request. Thus, this argument is not persuasive.

¶35    We are not persuaded, furthermore, that the agency's decision to put a behavioral restriction flag on the appellant's patient file is an action over which the Board has jurisdiction in either an IRA appeal or an appeal under chapter 75. *See, e.g.*, 5 U.S.C. §§ 2302(a)(2)(A) (definition of "personnel action"), 7512 (actions covered in a chapter 75 appeal). To the extent that the appellant complains that his due process rights "as a patient" were violated by the agency's action, PFR File, Tab 1 at 5, the Board also lacks jurisdiction over such a claim, *see Maddox v. Merit Systems Protection Board*, 759 F.2d 9, 10 (Fed. Cir. 1985) (the Board's jurisdiction is limited to those matters over which it has been given jurisdiction by law, rule, or regulation).

¶36     To the extent that the appellant claims that there is a discrepancy regarding the issuance date of the administrative judge's order on his motions, or that he was somehow prejudiced because the administrative judge issued this order on or near the date that the record closed below, we are not persuaded that a different outcome is warranted.

¶37     We also are not persuaded by the appellant's assertion of administrative judge bias.  The appellant has not identified, nor are we aware of, evidence of any "deep-seated favoritism or antagonism that would make fair judgment impossible."  *Bieber v. Department of the Army*, 287 F.3d 1358, 1362-63 (Fed. Cir. 2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶38     Accordingly, we have considered the appellant's remaining arguments in his petition for review, but we find them unavailing.

**NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW RIGHTS IN *PETERSON V. DEPARTMENT OF VETERANS AFFAIRS*, MSPB DOCKET NO. PH-0752-14-0706-I-1**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request further review of this final decision.  There are several options for further review set forth in the paragraphs below.  You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

<u>Discrimination Claims:  Administrative Review</u>

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC).  *See* Title 5 of the United States Code, section 7702(b)(1) (5 U.S.C. § 7702(b)(1)).  If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, NE
Suite 5SW12G
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims:  Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court.  *See* 5 U.S.C. § 7703(b)(2).  You must file your civil action with the district court no later than 30 calendar days after your receipt of this order.  If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative.  If you choose to file, be very careful to file on time.  If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security.  42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims:  Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8),

(b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction to review this final decision. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**NOTICE TO THE APPELLANT REGARDING YOUR FURTHER REVIEW
RIGHTS IN *PETERSON V. DEPARTMENT OF VETERANS AFFAIRS*,
MSPB DOCKET NO. PH-0752-14-0618-W-1**

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request the United States Court of Appeals for the Federal Circuit to review this final decision.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the Board's decision in the United States Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both.  Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right.  It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff.

Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for your appeal to the Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.